LOTTINGER, Judge.
This is an appeal by Dennis J. Johnson from a decision of the Louisiana Civil Service Commission.
The facts show that on April 20, 1966, J. D. Middlebrooks, acting warden of the Louisiana State Penitentiary, informed the petitioner by letter that he was relieved of his duties as Foreman III and was to be considered on annual leave until further notice. Subsequently, on April 22, 1966, the petitioner was informed by letter that he was being carried on sick leave. Petitioner was then requested to submit himself to a physical examination by the prison physician. The petitioner submitted to such an examination, following which, by letter dated May 5, 1966, the director of institutions informed petitioner that he was relieved of his classification as Foreman III and reassigned as Correctional Officer I. The reason given for the latter action was the medical opinion of the examining doctor that the petitioner was not physically cap *160 able of performing anything except light duty and that Correctional Officer I was the only position which the penitentiary had that could be performed by an individual having the physical limitations of the petitioner.
The petitioner appealed his reassignment to the State Civil Service Commission which held that the reassignment was justified and dismissed the appeal. The petitioner has taken an appeal to this Court.
Upon hearing of this matter before the Civil Service Commission, Dr. Clay Anthony Waggenspack, Jr., the personal physician of petitioner testified that during the year 1957 he had been treating the petitioner for an arterio-sclerotic heart disease with an anginal syndrome. This means that he has hardening of the arteries and the group of arteries that is manifested by the symptoms have to do with coronary arteries, which are the ones that supply oxygen to the heart muscle. Angina is the medical name for pain in the chest resulting from an inadequate amount of oxygen to the heart muscle. Dr. Waggenspack, who is a specialist in internal medicine, testified that for a man in the condition of petitioner, emotion is a much greater factor than physical exertion. The doctor was not familiar with the type of work involved in the duties of petitioner, however, he testified that he should not do any type of labor that makes him have severe pain in his chest. During the period that petitioner was under treatment by this doctor, he was taking pills for chest pain. Dr. Waggenspack testified that during the first five months of the year 1966, the petitioner called at his office three times complaining of chest pains. The first two times he came in he told the doctor that he was under a great deal of emotional stress and was uncomfortable, and the doctor advised him to take nitroglycerine pills. On the first of these occasions, he was also advised to take a thirty-day convalescent leave. On the second occasion, the doctor testified that the petitioner told him that he thought his job was in jeopardy and that it was vital that he return to work. The third visit during the year 1966 was on May 16 after petitioner had been reassigned to lighter duties, and at which time the patient advised the doctor that he was feeling better. The doctor testified that he thought the patient might have less chest pain if he were in a job that had less responsibilities.
Dr. Lorentz, a general practitioner, who was the physician at the Louisiana State Penitentiary also testified at the hearing before the Civil Service Commission. His findings were substantially the same as Dr. Waggenspack. Dr. Lorentz testified that any flareup in the condition of petitioner could be attributable to either emotional or physical exertion. He stated that there are four-things which may precipitate an attack: eating, exercise, emotion and exposure to cold. Dr. Lorentz was of the impression that the patient was capable of very limited activity. He stated that petitioner should not engage in the activity of driving equipment, such as a tractor or a bulldozer, for any period of time.
When Dr. Lorentz first saw petitioner in February of 1966, his diagnosis was that petitioner was suffering with an anginal attack secondary to anxiety. At this time petitioner was extremely anxious. The doctor again saw the patient on May 2 of 1966, at which time the patient conveyed to him that he had developed a lot of anxiety secondary to his situation revolving around his position as foreman. After the February visit, the petitioner was given ten days off from his work.
Neither Dr. Waggenspack nor Dr. Lor.-entz were familiar with the exact nature of the work performed by the petitioner in his position as Foreman III. Dr. Lorentz, however, testified that in requesting limited activity on behalf of the petitioner he was concerned primarily with the interest of Mr. Johnson personally, that he was thinking of his health and well-being. Of course, Dr. Waggenspack, petitioner’s personal physician was of the same opinion.
*161 Mr. J. D. Middlebrooks, the acting warden of the Louisiana State Penitentiary at Angola, Louisiana, testified relative to the duties assigned to the job of the petitioner as Foreman III. He testified that petitioner was in charge of the maintenance and upkeep of more than a hundred miles of roads and bridges plus the moving of earth whenever necessary for any projects, plus any drainage projects on the penitentiary grounds. He was responsible for the various bulldozers, draglines and motor-graders that belonged to the institution. According to the last inventory, there was some twenty-five pieces of heavy equipment assigned to the penitentiary. These duties required a great deal of moving around from place to place as there were a number of activities that had to be carried on simultaneously, such as hauling, digging ditches, and the repairing of roads and bridges. At times, when there were no inmate operators available, the petitioner' would have to operate and work some of this equipment. The normal work day was for eight hours a day, from eight o’clock a. m. to five o’clock p. m. Much of the time the job required exposure to the elements, such as heat, rain and cold.
Acting warden Middlebrooks testified that during the past year there had been a great increase in the program of improvement of the roads on the penitentiary grounds. He said that the roads were in a very bad condition of repair and that at the beginning of the year 1966, they were impassable in a number of places. He testified that because of his physical condition, petitioner couldn’t get around to seeing that all the operations were done and that he was unable to get efficiency out of his crew. In the interest of petitioner and in the interest of the institution, Mr. Middlebrooks felt that the petitioner would be better off in a position with less responsibility and less worry.
After his reassignment to Correctional Officer I, there was very little activity on the shift to which petitioner was assigned because all of the inmates were asleep during the hours when petitioner was on duty. While the job as foreman required a great deal of moving around in every respect, climbing in and out of vehicles, climbing on and off heavy equipment, seeing that the equipment was properly serviced, maintained and kept repaired at all times, supervising the various operations on the grounds of the penitentiary, as well as exposure to the elements, as Correctional Officer, the only duties of the petitioner was to see that the inmates stayed in their beds and were asleep.
The record discloses that during the entire year 1965, the petitioner took 158 hours of sick'leave. During the months of February, March and April of 1966, he took 276 hours during a three month period of 1966, or 118 hours over the entire year 1965.
Article 14, Section 15 of the Constitution of Louisiana deals with the Civil Service System in the state and in the municipalities. Section 15(N) (1) provides that:
“No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority, (a) The burden of proof on appeal, as to the facts, shall be on the employee.”
Therefore, according to the constitution of this state, the employee bears the burden of proof that his dismissal, or other action, was arbitrary and capricious. Miller v. State Department of Health, La.App., 135 So.2d 570; Domas v. Division of Employment Security of the Department of Labor, 227 La. 490, 79 So.2d 857.
The determination of facts by the Civil Service Commission is final and not reviewable by this Court if there is some evidence to support its finding. Louisiana Constitution, Art. 14, Section 15(0) (1); Vidrine v. State Parks and Recreation Commission, 169 So.2d 641, application denied 247 La. 348, 170 So.2d 867. Villemarette v. *162 Department of Public Safety, La.App., 129 So.2d 835, 836.
The great preponderance of the evidence in the record discloses that the petitioner was reassigned from Foreman III to Correctional Officer I because of his medical condition.
Although the petitioner claims that his reassignment was a demotion for political reasons and that the demotion was made to create a vacancy for someone else who was allegedly hired for that position before the demotion of petitioner, none of these factual allegations have been proved by the evidence. Although another employee was assigned to perform the duties of petitioner during his absence for sick leave, this was necessary for the performance of the work required to be done. The duties of his position was that of great scope and responsibility and a vacancy therein for any period of time would have created a hardship on the efficient performance of the work required of him.
Petitioner has admittedly suffered from an arteriosclerosis of the aorta resulting in angina pectoris for a period since the year 1957. His physical activities are necessarily limited by his illness. At the time of his reassignment, the evidence discloses without a doubt that the reassignment was for the physical well-being of petitioner. Certainly the petitioner has failed to sustain his burden of proving otherwise.
The petitioner has cited us the case of Burton v. Department of Highways, La. App., 135 So.2d 588, as authority in support of its argument that his dismissal, or reassignment, from the position of Foreman III was not justified. In that case, the Court, citing Dickson v. Department of Highways, 234 La. 1082, 102 So.2d 464, said:
“In our opinion the Dickson case is authority for the proposition that the inability of an employee to perform his duties resulting from sickness or accidental injury provides legal cause for separation from the classified service during such disability provided there is a showing that his replacement is essential to the efficient operation of the department.”
In the Burton case, the employee had been operated upon and it was during the convalescent period that he was released from his duties. Such is not the situation in the case before us. Here we find that the employee has had a long period of heart trouble. In his duties he was responsible for the supervision..of a large crew as well as the maintenance of roads, bridges, drainage ditches, etc., on the penitentiary grounds. His work record discloses that the emotional and physical strain of his job was too much for his condition. His disability, although of a limited nature, was not temporary but permanent.
We find no error in the decision of the Civil Service Commission and, for the reasons hereinabove assigned, the decision of the said commission will be affirmed, all costs of the appeal shall be paid by petitioner.
Judgment affirmed.